[Civil No. 4130.   Filed December 9, 1940.]

[108 Pac. (2d) 388.]

In the Matter of the Estate of THOMAS C. NOLAN, Deceased.   GRACE NOLAN (Sometimes Known as GRACE I. HUMPHRIES), Individually and as Executrix of the Last Will and Testament of THOMAS C. NOLAN, Deceased, Appellant, v. HONORA M. NOLAN, Appellee.

Messrs. Fennemore, Craig, Allen & Bledsoe, for Appellant.

Mrs. E. G. Monaghan and Mr. Thomas A. Flynn, for Appellee.

LOCKWOOD, J.—This is a case growing out of the situation discussed by us in *Honora M. Nolan, Appellant,* v. *Grace I. Humphries, etc., Appellee, ante,* p. 353, 108 Pac. (2d) 385. There are four separate appeals in this court arising out of this situation, and under the rule laid down in *Stewart* v. *Phoenix National Bank,* 49 Ariz. 34, 64 Pac. (2d) 101, we consider the record in each and all of these cases as before us for the purpose of determining the present appeal.

This appeal is by Grace Nolan, hereinafter called appellant, from an order of the probate court granting a family allowance to Honora M. Nolan, hereinafter called appellee, out of the estate of Thomas C. Nolan, hereinafter called deceased, as his surviving wife. The first question involved is whether appellant or appellee was the legal wife of deceased at the time he passed away. Appellee bases her claim on the fact that she was married to Thomas C. Nolan in 1903, and lived with him as his wife until the summer of 1931, when they separated, and that no legal dissolution of such marriage took place until his death. Appellant bases her claim on a divorce obtained by deceased on June 2, 1932, in the Court of the First Instance of the District of Bravos, State of Chihuahua, Mexico, and a

marriage ceremony between herself and deceased on June 4, 1932, in Las Cruces, New Mexico. It is admitted that if the divorce in question was a valid one, the marriage is valid, but that if it falls, the marriage of appellant must also fall. We consider, therefore, the validity of the divorce.

The trial judge found the divorce to be invalid, and we examine the evidence to determine whether this finding is sustained thereby. The undisputed facts are as follows: Appellee and deceased had been husband and wife for nearly twenty-eight years, with their matrimonial domicile in Yavapai county, Arizona. On April 8, 1932, deceased filed a petition for divorce in the court above referred to, which we shall hereafter call the Mexican court, alleging, among other things, that he was a legal resident of the City of Juarez, State of Chihuahua, in the Republic of Mexico; that appellee, his wife, had deserted him for more than six months, and that he was *"ignorant of her present legal residence."* He asked for a divorce, and, on account of his lack of knowledge of her residence, that service upon her be made by publication in the official state newspaper. The publication was duly made in accordance with the Mexican law, and the procedure from that time was in all respects in accordance with that law, and a decree was entered on June 2d establishing the default of appellee, and granting to deceased a decree of divorce, with a right to contract a new marriage. Appellee had no knowledge of these proceedings until long after the final decree was entered, and did not know of the attempted remarriage of deceased until some time after it had occurred. Upon this state of facts, the trial court found the marriage to be invalid.

The Supreme Court of the United States, in considering the effect of the full faith and credit clause of the Constitution (section 1, article IV), in respect

to divorce cases, has laid down the following rule: When the matrimonial domicile of the parties is in the state granting the divorce, and the proceedings therein are in accordance with the law of such state, the divorce must be recognized as being valid for all purposes by all other states in the Union. When the domicile of the plaintiff is in the state granting the divorce, but the matrimonial domicile and the personal domicile of the defendant are in another state, if the defendant is not served personally within the state granting the divorce, and does not appear in the action, the other states may or may not recognize such a decree of divorce, in accordance with their own public policy, and are not bound by section 1, article IV, *supra*. *Thompson* v. *Thompson,* 226 U. S. 551, 33 Sup. Ct. 129, 57 L. Ed. 347; *Atherton* v. *Atherton,* 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794; *Haddock* v. *Haddock,* 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1. While, strictly speaking, these decisions are not in point on a divorce granted in a jurisdiction outside of the United States, and we, therefore, are free to recognize or repudiate such a divorce, regardless of how it was obtained, we think the reasoning of and the principles governing the decisions above cited are sound, and we, therefore, hold that under the law of Arizona, where a divorce is obtained in a foreign jurisdiction, with personal service within that jurisdiction upon the defendant, or an appearance by him, and the proceedings in the foreign court are in accordance with the law of the foreign jurisdiction, this state will recognize such divorce as valid for all purposes. But when neither the matrimonial domicile nor the domicile of defendant is in such jurisdiction and there is no personal service upon defendant within the jurisdiction, nor an appearance by him, and it appears plaintiff has been guilty of fraudulent actions in securing the divorce, this state will not recognize it as valid.

■ Applying this rule to the present case, it is apparent that deceased must have known at the time he applied for his divorce in Mexico that appellee was a legal resident of Prescott, Arizona, and that notice sent to her at her usual address in Prescott would have reached her. Knowing this, he represented to the Mexican court that he did not know her address, and by this fraud practiced on such court obtained service by publication. The obvious purpose of this was to secure the divorce without her having an opportunity to appear and defend. We think that no court of equity should recognize a divorce obtained in this manner, and, therefore, hold that on the facts as they appear from the record the trial court was justified in holding the Mexican divorce to be void for lack of jurisdiction. It necessarily follows that appellant was never legally married to deceased, and at the time of his death appellee was his lawful wife.

We consider next the question of whether, even though she was his wife, she was entitled to a family allowance, particularly in the amount which the court gave her. Appellant urges (a) that appellee had voluntarily waived any right to a family allowance by her previous conduct and her delay in asking for it for more than two years after the will was admitted to probate; (b) that it was unreasonable in amount on account of the small value of the estate; and (c) that it should not have been retroactive in its nature and indefinite in its termination.

■ It is not necessary for us to state the evidence as to why this delay occurred, and it would unduly extend this opinion. We think that under all the circumstances of the case it cannot be said that appellee had waived her rights, or that the delay in claiming the allowance was so great, as a matter of law, it barred the court from making it.

The same rule applies to the fact that the allowance was made retroactive to the death of deceased and continued until the further order of the court.

The question of the amount of the allowance presents a little greater difficulty. One hundred dollars per month, under our modern conditions, is not in and of itself so excessive an amount to allow for the maintenance of the widow that we can say it is too great. However, it is true that the total size of the estate should be taken into consideration in determining whether the allowance be great or small. This matter is necessarily greatly in the discretion of the trial court, and under all the facts in the present case, considered together with the facts in the other appeals, we cannot say, as a matter of law, that the allowance was so excessive as to show an abuse of such discretion.

The order appealed from is affirmed.

ROSS, C. J., and McALISTER, J., concur.