261 P.2d 978

BRANDT v. BRANDT.

No. 5497.

Supreme Court of Arizona.
Oct. 7, 1953.

156

Fickett & Dunipace and Robert D. Stauffer, of Tucson, for appellants.

Krucker, Evans & Kemper, of Tucson, for appellees.

MURRY, Superior Court Judge.

This is an appeal from a declaratory judgment by the lower court wherein it was adjudged that a Texas divorce decree between one Fritz T. Brandt and appellee Maude Brandt was void, that the subsequent marriage between Fritz T. Brandt and appellant Leta F. Brandt was void and of no effect, and that appellee is the lawful surviving spouse of Fritz T. Brandt, deceased.

In brief the facts are these. The action was brought by Maude Brandt, plaintiff-appellee, against Leta F. Brandt, defendant-appellant, and tried to the court with a jury answering a special interrogatory which counsel for defendant concedes was

merely advisory to the court. The crux of the matter is that both appellee and appellant claim to be the lawful surviving spouse of Fritz T. Brandt and thus to have a claim to a pension from the United States Veterans' Administration.

Maude Brandt and Fritz T. Brandt were married in New Bern, North Carolina, June 14, 1911. In October, 1935, they, in company with their five children, moved to Tucson, Arizona, with the intention of making Tucson their home permanently or for an indefinite time in the future. Maude Brandt has resided there continuously since that time.

On April 24, 1939, Maude Brandt and Fritz T. Brandt entered into a separation agreement and did not live together thereafter as husband and wife.

Fritz T. Brandt entered the Maritime Service of the United States in September, 1941, at the port of Los Angeles, State of California, and was in said service when he died at a foreign port on March 15, 1946. He first left Tucson in September, 1941, and returned sometime prior to the end of that year. On February 5 the next year he went to Houston, Texas; on February 9 he embarked on a voyage to New York, returning to Houston March 10; then on March 18 he embarked on a voyage which carried him to various parts of the world, returning to Houston in December, 1942.

On February 23, 1943, while in Houston, Fritz T. Brandt commenced an action against appellee for a divorce, being cause No. 290995 in the District Court of Harris County. On March 23, 1943, appellee was served with summons and a copy of the amended complaint at her home in Tucson, by the Sheriff of Pima County, Arizona. Appellee is not a domiciliary of the State of Texas, she was not served with process within that state, nor did she enter an appearance in that action. On April 27, 1943, the Texas court entered a default decree of divorce to Fritz T. Brandt.

A marriage license was secured in Tucson, May 3, 1943, by Fritz T. Brandt and the appellant, Leta F. Brandt. On the following day a marriage contract was signed and the marriage ceremony was performed by a Christian minister in Tucson. On June 10, 1943, the decedent left Tucson, and from that date until the date of his death, March, 1946, he was never within the State of Arizona for a consecutive period of one year.

The issue of the domicile of Fritz T. Brandt, upon which hinges the solution of this case, was resolved in the following finding of the trial court (which was in accordance with the special finding of the jury) viz.:

"That when the said Fritz T. Brandt went to the City of Houston, Harris County, Texas, in February, 1942, he did not then, nor at any time between said month of February, 1942, and the said 23rd day of February, 1943, have the intention to make the City of Hous-

158

ton, Harris County, Texas, his home permanently or for an indefinite period of time."

No attempt will be made by us to discuss separately each of appellant's fourteen assignments of error. Suffice it to say that all points have been considered and those we deem controlling will be treated.

▮▮▮▮ Appellant vigorously asserts that: "Under Texas law a failure to comply with the requirements of the residence statute in a divorce action is not jurisdictional." That may well be true, but it is beside the point. "Residence" and "domicile" are not synonymous at common law, nor does the one term necessarily include the other. Saying that residence is not a jurisdictional prerequisite is not equivalent to saying that domicile is not essential to a valid decree. The court's finding in the case at bar dealt with domicile, not residence, and without the intent to make the State of Texas his home either permanently or for an indefinite time, Fritz T. Brandt could not acquire domicile therein. It is well settled that no state has jurisdiction to grant a divorce unless one of the spouses is a domiciliary of the state, for without such domicile there is no sufficient nexus between the state and the marriage relationship or status to entitle that state to put an end to the marriage. In short, there is no jurisdiction of the subject matter of a divorce action, and the state itself lacking such jurisdiction, it cannot be conferred upon its courts. By its decision in the second case of Williams

v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366, the Supreme Court of the United States held that a divorce decree granted without domicile of either spouse within the state is void and the decree subject to collateral attack. This pronouncement is applicable here. For later cases in point, see Ulrey v. Ulrey, Ind.Sup., 106 N.E.2d 793; Cohen v. Cohen, 319 Mass. 31, 64 N.E.2d 689, 163 A.L.R. 362; and Hobbs v. Hobbs, 91 U.S.App.D.C. 68, 197 F.2d 412, certiorari denied 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. 664. Furthermore the jurisdictional basis of the Texas decree cannot be res judicata as to this appellee, who never appeared in the Texas action. And certainly, "Neither reason nor morals require her to journey into a foreign land, among strange people, to answer the call of a court that had not the slightest claim to jurisdiction over her status." In re McNutt's Estate, 36 Cal.App.2d 542, 98 P.2d 253, 255.

▮▮▮▮ Therefore, we hold that although the residence statute in a divorce action may not be jurisdictional in the State of Texas, nevertheless a Texas judgment is void and not merely voidable unless the domicile has been established, which was not done in this case, hence such a judgment may be attacked collaterally in a proceeding initiated in a sister state.

▮▮▮▮ In Brecht v. Hammons, 35 Ariz. 383, 278 P. 381, 382, this court said:

"Three things must concur or a judgment is void upon its face, and

may be attacked at any time. The court must have (a) jurisdiction of the subject-matter of the case, (b) jurisdiction of the persons involved in the litigation, and (c) jurisdiction to render the particular judgment given."

See also Stephens v. Thomasson, 63 Ariz. 187, 160 P.2d 338; In re Nolan's Estate, 56 Ariz. 361, 108 P.2d 388; Gilmet v. Gilmet, 56 Ariz. 60, 105 P.2d 513; and Banco de Sonora v. Morales, 23 Ariz. 248, 203 P. 328. It is apparent that in Arizona a collateral attack may be made upon a foreign judgment upon the grounds that the court rendering the judgment did not have jurisdiction over the res of the marital status which was the subject matter of the action, and that evidence may be introduced to contradict the record of such a foreign judgment.

■ Appellant urges that the "Full Faith and Credit" clause, section 1 of Article 4 of the Constitution of the United States, applies and prevents relief to appellee, arguing that the minority opinion in Williams v. State of North Carolina, supra, should be followed by this court. In Stephens v. Thomasson, supra, we discussed the limitations of the full faith and credit clause and quoted the majority opinion in the Williams case with approval. We also quoted from Perkins v. Benguet Consol. Mining Co., 55 Cal.App.2d 720, 132 P.2d 70, 85, saying:

"It is well settled that a state is not required to recognize the judgment of another state, or of a territory or country subject to the jursidiction of the United States, where the judgment was rendered by a court without jurisdiction, or where it has been obtained by extrinsic fraud. * * *"

We do not intend to depart from this, hence we hold that the Arizona courts are not precluded by the full faith and credit clause from impeaching a divorce decree granted in another state that had no jurisdiction of the subject matter of the action.

■ The next question is whether this action is barred by the statute of limitation. Appellant contends that the three-year statute contained in section 29–203, A.C.A.1939, may be applied to the void Texas judgment. We disagree. The Texas court has put it succinctly in Reed v. State, 148 Tex.Cr.R. 409, 187 S.W.2d 660, 662, saying, "A judgment of a court without active jurisdiction over the person and subject matter is void and of no effect, and may be attacked anywhere and at any time." For stronger language to the same effect, see City of Los Angeles v. Morgan, 105 Cal.App.2d 726, 234 P.2d 319, at page 322. We hold that the statute of limitation does not operate to bar an attack upon a void judgment. To hold otherwise is to give force to a judgment already declared void.

Appellant contends that as a matter of law appellee is estopped to bring this action, or is barred by laches to assert she is the lawful widow of Fritz T. Brandt. The basis for this contention is appellee's inaction and failure to move more expeditiously to vacate the Texas judgment or assert to

appellant and to the world that she, appellee, was the lawful spouse. Appellee did nothing from May 10, 1943, when she first learned the divorce had been decreed in Texas and her husband had remarried, until after Fritz Brandt died, March 15, 1946.

We agree that estoppel or laches can be a defense to an action attacking the validity of a divorce decree. In the Restatement of the Law, 1948 Supplement, Conflict of Laws, Section 112, comment (c), we find:

"Any person may be precluded from questioning the validity of a divorce decree if, under all the circumstances, his conduct has led to the obtaining of the divorce decree, or for any other reason has been such as to make it inequitable to permit him to deny the validity of the divorce decree."

And in 12 A.L.R.2d 153, there is an excellent annotation on the matter of laches as a defense.

These are equitable defenses, and greatly within the sound discretion of the trial court. We said in State v. Martin, 59 Ariz. 438, 130 P.2d 48, 52, "The defense of laches is one depending to a great extent on the sound judicial discretion of the trial court * * *."

In the instant case there is abundant evidence in the record, in the form of letters from Fritz T. Brandt to appellant Leta F. Brandt, from which the trial court might well have drawn the inference that Fritz Brandt had no bona fide intention of establishing domicile in Texas; that his residence there between ship voyages was a subterfuge; that his grounds for divorce were of very questionable validity; that he did not expect appellee to appear in the Texas action because of the expense and difficulty of travel; that appellant had full and complete knowledge of all the facts surrounding the divorce, even going so far as to counsel and advise Fritz Brandt of ways to speed the process of getting his divorce; and that appellant, to coin a phrase, "walked in with her eyes open". We must assume the trial court weighed the facts that the second marriage occurred on the seventh day after the divorce, that there are no issue of this union, that there are no intervening rights of third parties, and that after his remarriage Fritz Brandt was absent from Arizona almost continuously. Upon this basis, we cannot say as a matter of law that the trial court erred in failing to find that the stronger equities were with appellant.

The next contention is that one claiming as an heir is estopped when the decedent, if living, would also be estopped, and we are cited to In re Brandt's Estate, 67 Ariz. 42, 190 P.2d 497, wherein we held that Fritz T. Brandt, were he alive, would be estopped to deny the validity of the Texas divorce and subsequent marriage to appellant herein, and that his executrix stood in his shoes. But, the law applying to the personal representative is not necessarily

that applying to the heir. In 31 C.J.S., Estoppel, § 132, p. 399, we find:

"An heir stands in privity with the ancestor; and an estoppel in pais enforceable against the ancestor is likewise enforceable against the heirs. However, the heirs are not estopped where the elements of equitable estoppel are not present, *and they are not bound by an estoppel against the ancestor where they do not claim in the same right.*" (Emphasis supplied.)

This is not a contest between the heirs and a third party, wherein the heirs claim some derivative right from the ancestor, but rather this is a contest between the survivors themselves for the sole purpose of determining which one is the lawful heir. Appellant argues that the very fact that appellee claims to be the heir estops her from proving that she is such. We hold that estoppel cannot be used in these circumstances to defeat such a claim.

We are also met with the argument that the doctrine of res judicata applies, and that appellee must be bound by the judgment in the case of In re Brandt's Estate, supra. In that case Leta F. Brandt, appellant in this case, had filed a petition in Probate Cause No. 10763 in the Superior Court of Pima County for a family allowance as the surviving spouse of Fritz T. Brandt, deceased. The executrix, Clarine G. Brandt, daughter of the deceased, defended on the grounds that the same Texas divorce involved herein was invalid, and that because of such invalidity Leta F. Brandt was not the lawful widow of the decedent and was not entitled to a family allowance. Leta F. Brandt raised the question of estoppel, and this court upheld the verdict directed in her favor by the trial court on the basis of that estoppel, saying that the deceased could not attack his Texas divorce nor his subsequent marriage, therefore neither could his representative. The validity of the Texas decree was not adjudicated, and we clearly saw the possibility of this later action, saying:

"Nor is there any doubt but that in an appropriate proceeding an Arizona Court would have jurisdiction to question the validity of the Texas divorce decree."

In 30 Am.Jur., Judgments, Section 220, we find:

"It is well settled that, with certain exceptions hereinafter noted, the doctrine of res judicata does not operate to affect strangers to a judgment, that is, to affect the rights of those who are neither parties nor in privity with a party therein. * * * A party to the principal case is regarded as a stranger to the judgment rendered in the previous action where he was not directly interested in the subject matter thereof, and had no right to make defense, adduce testimony, cross-examine witnesses, control the proceedings, or appeal from the judgment, even though he could have made himself a

party to the previous action. The right to intervene in an action does not, in the absence of its exercise, subject one possessing it to the risk of being bound by the result of the litigation, under the doctrine of res judicata."

We believe that in the previous case appellee did not have the rights above set out, and that she never lost her status as stranger to that action.

Likewise, on the matter of privity of the appellee with the administratrix, in 30 Am. Jur., Judgments, Section 225, we find:

"There is no generally prevailing definition of privity which can be automatically applied to all cases involving the doctrine of res judicata. Who are privies requires careful examination into the circumstances of each case as it arises. * * *"

And again in 21 Am.Jur., Executors and Administrators, Section 6:

"Although there is such a privity between a decedent and the personal representative of his estate that an estoppel arising by reason of the decedent's conduct may be asserted against his representative, it does not follow necessarily from the fact that a personal representative stands in privity with his testate or intestate that he stands in privity with an heir, legatee, devisee, or creditor. * * *"

We hold that appellee was neither a party nor privy to the judgment In re Brandt's Estate, supra, and therefore is not bound by that holding.

Appellant further contends that the case should be reversed because of the admission of incompetent evidence.

We held In re Guardianship of Sorrells, 58 Ariz. 25, 38, 117 P.2d 96, 101:

"We have repeatedly held that when a case is tried to the court alone, even though evidence was improperly admitted, if there is sufficient legal evidence to sustain the findings and judgment, we will assume that the court disregarded the improper testimony in reaching its conclusion and that the case will not be reversed on account of the admission of such testimony. (Citing cases.) We think, in reason, the same rule should apply when the verdict is merely advisory for it is the finding made by the court, and not the verdict of the jury, which determines the judgment, and that the admission of improper testimony in such a case is not sufficient to reverse it for a new trial if there is sufficient legal evidence in the record to sustain the findings and judgment of the court."

■ We have carefully examined the transcript of evidence and the findings of fact and conclusions of law. We find ample legal evidence to sustain the judgment, and no reversible error in the proceedings.

Judgment affirmed.

STANFORD, C. J., and UDALL, LA PRADE and WINDES, JJ., concurring.

Note: Justice PHELPS having disqualified, the Honorable PORTER MURRY, Judge of the Superior Court of Greenlee County, was called to sit in his stead.