Orville FREEMAN, Secretary of Agriculture, Appellant,

v.

Charles Patrick RYAN and C. Wayne Smyth, Appellees.

No. 21446.

United States Court of Appeals District of Columbia Circuit.

Argued May 10, 1968.

Decided Oct. 16, 1968.

Mr. Walter H. Fleischer, Atty., Department of Justice, with whom Asst. Atty. Gen. Edwin L. Weisl, Jr., Messrs. David G. Bress, U. S. Atty., and Alan S. Rosenthal, Atty., Department of Justice, were on the brief, for appellant.

Mr. Charles Patrick Ryan, Washington, D. C., with whom Mr. Edward J. Ryan, Washington, D. C., was on the brief, for appellees.

Before FAHY, Senior Circuit Judge, and McGOWAN and LEVENTHAL, Circuit Judges.

PER CURIAM:

This is an appeal from an order awarding attorney's fees to appellees, who were counsel for the class of non-nearby milk producers in the action that resulted in our decision in Blair v. Freeman, 125 U.S.App.D.C. 207, 370 F.2d 229 (1966), which held invalid the "nearby dif-

ferential" provision of the New York-New Jersey federal milk order.

■ We hold that appellant Freeman, Secretary of Agriculture, has standing to contest the award. In the interest of justice and being advised in the premises we vacate the order of the District Court and enter our own award.

1. The District Court's order provided for payment of a $300,000 fee award out of an escrow fund of approximately $550,000. That is the fund that was established in accordance with an order of this court of December 9, 1966. That order stayed the transmission of this court's opinion for a 90-day period, available for filing a petition for certiorari, and permitted Secretary Freeman, then appellee, to make payments to milk producers after deducting the sums needed to make "nearby differential" payments, but required that such

sums be held in an interest-bearing escrow account until further order of the court. The fund grew to its $550,000 size in the two months that elapsed before February 8, 1967, when the Government decided that certiorari would not be brought, and the nearby differential provision would be terminated.

This court's order of February 28, 1967, remanded to the District Court to consider, *inter alia*, the application for attorney's fees.[1]

■ 2. The District Court's fee order of August 16, 1967, states, *inter alia*, that the Secretary of Agriculture "has no legal interest" in the escrow fund "or resulting standing to interpose objections to its distribution other than as a stakeholder of such funds under order of the Court of Appeals or in an advisory capacity." Appellees have moved to dis-

---

1. The order provided (Order and Memorandum of the U.S. Court of Appeals in Blair v. Freeman, No. 19,801, Feb. 28, 1967):

"3. As to the funds that are now allocable to non-nearby producers, their counsel resist distribution because of their claim as counsel to attorneys' fees.

"We see no occasion for extensive review of the principles governing fee allowances. These principles have been recently and fully described in Schmidt v. McCarthy, 125 U.S.App.D.C. 131, 369 F.2d 176 (1966); Bakery Union v. Ratner, 118 U.S.App.D.C. 269, 335 F. 2d 691 (1964), on appeal from remand, 122 U.S.App.D.C. 372, 354 F. 2d 504 (1965). The reasonable value of services must take into account the extent (time) and nature of service (difficulty of work and persistence); complexity of issues; and distinctive contribution (if any). These are considered in the framework of benefits conferred on the class.

"4. The matter is one that can best be resolved by the District Court rather than this Court in view of the nature and range of the dispute presented.

"Thus appellee says that the fee requested is out of all proportion to the services of appellants' counsel. Appellee further states that appellants' counsel, though victorious, have conducted the litigation with unnecessary and unseemly invective.

"Appellee raises the question whether appellants' counsel have produced the fund, in any realistic sense, since it developed solely out of the need for consideration of certiorari by the Solicitor General, that there would have been no fund if appellants' counsel had been victorious to the point of instant acquiescence by the Government, and that the lesser victory may not generate a fund for fees.

"On the issue of benefit, appellee notes that many producers who fall in the legal category of non-nearby producers were not benefited by the litigation and indeed actively opposed it as being to their detriment, taking all aspects of the financial impact into account. Our opinion noted that the nearby differential may have resulted in a benefit to non-nearby producers (slip op. p. 18).

"5. In the circumstances we are of the view that the court's outstanding order should be amended to permit immediate distribution of the moneys that would have been payable to nearby producers, with interest earned thereon. The fund earmarked for non-nearby producers will be subject to the disposition of the District Court, for allowance of such fee as it may deem appropriate and remittance of the balance to the non-nearby producers pro rata."

miss the Secretary's appeal for lack of standing. Their motion is denied. Where litigation involving federal programs comes to involve questions of attorney's fees the cognizant federal official has an interest in the fee award as well as the merits of the litigation even though, or assuming, the fee does not decrease funds in the Treasury.

■ This has been indicated without discussion or debate in rulings of this court.[2] We think it is one aspect of the interest of Government officials in the programs they administer, an interest that is not to be narrowly and technically confined so as to limit presentation to courts of issues they consider to have significance in terms of their overall responsibilities as public officials.[3]

■ 3. We have decided, for various reasons, to set the fee directly, rather than remand for an evidentiary hearing of the kind we previously contemplated.[4]

■ Our objective is to proceed in accordance with equitable principles so as to reward the attorneys whose service in stopping an unauthorized payment has been of benefit to the class of private persons involved, and to the public interest in observance by administrative and executive officials of statutory limitations on their authority.[5]

A fair fee to such counsel must take into account its necessarily contingent nature.

On the other hand, the underlying principles of equity that are applicable require us to take into account some limitations on the fee that might otherwise be payable—apart from the difficulty in quantifying the benefit (*supra* note 4). While counsel's diligence and resourcefulness in evolving a general approach merit appropriate commendation, we would be less than candid if we failed to note that a significant aspect of the research required for the prior opinion had to be undertaken by this court, and that the sharpness of tone and approach in various submissions diluted the assistance available from counsel.

■ The statement by counsel as to amounts of time devoted to the case, which appellant characterized as amounts that appear on their face to be questionable, were accepted in an abbreviated

2. E.g., General Accid. Fire & Life Assur. Corp. v. Donovan, 102 U.S.App.D.C. 207, 208, 251 F.2d 961, 962, n. 1. (1958).

3. SEC v. United States Realty & Improvement Corp., 310 U.S. 434, 460, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694 (1967); McKittrick v. Gardner, 378 F.2d 872, 875 (4th Cir. 1967).

4. Prominent among these is the consideration that this court is best situated to appraise the worth of counsel's services in providing assistance in the salient decision making. It also appears that the inquiry which this court contemplated would be made in the District Court—an analysis of the benefit rendered the class —was not made, and is apparently too complicated to warrant protracted investigation. It should be noted, however, that the benefit to the non-nearby producers cannot be found on an adding machine by adding up their increase in receipts. It appears that at least some producers whose payments would be increased by discontinuance of the nearby

differential thought their overall interest lay in maintaining nearby producers in the pool, apparently to assure an increased pot even with a smaller share.

If, on the one hand, receipt of escrow funds by a producer does not necessarily establish that he benefited from discontinuance of the differential, it is also true, as the District Court observed, that a milk producer advantaged by termination of the differential was given a benefit extending into the future, over and above the short period following this court's order, when the escrow fund was established.

Monetary benefit is not decisive, since a fee is often payable when the benefit cannot be translated into dollar terms. The difficulty here is that the District Court assumed that the amount of the escrow fund was a minimum and indisputable benefit.

5. Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 165–167, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Bebchick v. Public Util. Comm'n, 115 U.S.App.D.C. 216, 233, 318 F.2d 187, 204 (1963).

procedure without providing for evidentiary testing by appellant. In cases like these, time is a relevant though not decisive consideration.[6] We do not think it necessary to have an exact finding on this point beyond the general finding of the District Court that substantial time was devoted to the case over a period of two years.

Having due regard to the various factors involved and equitable considerations applicable, it is our conclusion that the fee should be set at a sum below the $300,000 figure proposed by counsel, but above the $50,000 minimum which appellant conceded would not be objectionable. We conclude that appellees should be awarded attorney's fees of $185,000, plus out-of-pocket expenses of a kind customarily reimbursed to counsel, and remand for entry of an appropriate order.[7]

Remanded.

---

6. McKittrick v. Gardner, *supra* note 3, 378 F.2d at 875.

7. Various motions pending may be considered as either disposed of in accordance with our opinion or dismissed as moot.